UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                                  No. **CR 04-2250 MCA**

**YAUDIS VENZANT DIAZ**,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Yaudis Venzant Diaz's *Motion to Dismiss* [Doc. No. 41] filed on May 24, 2005. Having reviewed the parties' submissions, the relevant law, and being fully advised in the premises, the Court denies Defendant's motion for the reasons set forth below.

### I.    BACKGROUND

At a suppression hearing before the Honorable John Edwards Conway on March 23, 2005, counsel elicited testimony regarding Defendant's arrest on October 16, 2004, about six days before the consensual search of Defendant's residence which formed the basis for his *Motion to Suppress* [Doc. No. 22]. According to that testimony, Albuquerque Police Department (APD) Officer Mike Werner was called to the scene of a traffic stop on October 16, 2004, because other officers under his supervision had used force in effecting Defendant's arrest, which resulted in some lacerations and bruising on Defendant's face. Officer Werner interviewed the arresting officers, who said that it was necessary for them

to use force to effect the arrest on that occasion because Defendant physically resisted and had swallowed some type of illegal narcotics.  Officer Werner also interviewed Defendant, who said that he was "high" and that he might have swallowed some "dope."  Officer Werner summoned an ambulance for Defendant, who was taken to a hospital for medical attention following the October 16 arrest.

At the suppression hearing, Defendant gave a different account of his arrest on October 16, 2004.  According to Defendant, the APD officers deliberately beat him and threatened him on that occasion.  Defense counsel also elicited testimony about the apparent lack of police reports or other documentation regarding this incident.  Based on his own testimony and the alleged absence of any police records to document the October 16 incident, Defendant asserted at the suppression hearing that his consent to the search of his residence six days after the October 16 incident was not voluntary because he felt that he had no choice but to comply with the officers' requests in order to avoid another beating.

Judge Conway found that the officers' testimony at the suppression hearing was more credible than Defendant's testimony.  Judge Conway stated that he was troubled by the lack of records regarding the October 16 incident, but not as it relates to the Defendant's consent.  Accordingly, Defendant's *Motion to Suppress* [Doc. No. 22] was denied.

Judge Conway directed counsel to look into the October 16 incident, and after the suppression hearing the parties were provided with additional time to conduct discovery on this issue.  On May 24, 2005, Defendant filed a *Motion to Dismiss* [Doc. No. 41] based on allegations of outrageous government conduct.  In its response brief filed on June 15, 2005,

the Government indicated that it had produced to Defendant copies of APD "call-out" sheets regarding the October 16 traffic stop, as well as a one-page report and photographs prepared by a field investigator. The Government's response brief acknowledged, however, that the incident report supposedly prepared by the APD officer involved in the altercation with Defendant was still missing and unaccounted for at that time.

In his reply brief filed on June 24, 2005, Defendant does not assert that the new information produced by the Government provides any further support for his argument that the charges must be dismissed based on outrageous conduct. Instead, Defendant's reply brief presented an entirely new theory of outrageous conduct based on the involvement of a confidential informant, and he requested that the Court compel this confidential informant to testify at a hearing regarding his or her alleged involvement in the crimes Defendant is charged with committing. Per this request, the Court held a sealed *in camera* hearing to determine the confidential informant's role, if any, in these crimes.

**II.     ANALYSIS**

Courts have interpreted the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution to prohibit the prosecution of offenses developed through outrageous government conduct that violates notions of fundamental fairness and is shocking to the universal sense of justice. See United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994). The Tenth Circuit, however, has never rendered a decision upholding the dismissal of an indictment based on the defense of outrageous government conduct. See United States v. Garcia, 411 F.3d 1173, 2005 WL 1400394, at *7

(10th Cir. June 15, 2005).

To succeed on an outrageous conduct defense in this circuit, "the defendant must show either: (1) excessive government involvement in the creation of the crime, or (2) significant government coercion to induce the crime." Pedraza, 27 F.3d at 1521. Under either of these two theories, a defendant "must still prove that the government's conduct directly affected him." Id. at 1522. "No matter how outrageous the government's conduct, due process is not offended unless the government's actions 'had a role in inducing the defendant to become involved in the crime.'" Id. (quoting United States v. Gamble, 737 F.2d 853, 858 (10th Cir. 1984). Thus, whether it takes the form of poor record-keeping, the use of excessive force, or an attempt to cover up the use of excessive force, police misconduct does not provide a basis for the "outrageous conduct" defense unless it is causally related to inducing the Defendant's involvement in the crime.

The *Indictment* [Doc. No. 9] in this case charges Defendant with committing three crimes: (1) being a felon in possession of a firearm, (2) possession with intent to distribute more than five grams of cocaine base, and (3) using and carrying a firearm in relation to a drug trafficking crime. All of these charges arise from the discovery of a firearm during a consensual search of Defendant's residence on October 22, 2004, and the discovery of illegal narcotics during the subsequent execution of a search warrant on that date.

Defendant has neither introduced nor proffered any evidence showing that these alleged crimes were induced by outrageous conduct on the part of the Government. Even if Defendant's version of events were to be credited, the October 16 incident provided no

4

coercive inducement to illegally possess firearms or cocaine base six days later, nor does the October 16 incident indicate any excessive governmental involvement in the commission of these crimes. Defendant has not alleged, much less proven, that the officers threatened or beat him on October 16, 2004, in order to induce him to commit other crimes six days later. Any physical altercation that occurred on that date simply has no causal connection to the Defendant's alleged involvement in the crimes charged in the *Indictment*. According to Defendant's own testimony at the suppression hearing, the APD officers' threats were directed at inducing him to remain silent about the alleged beating, not to commit additional crimes. Therefore, Defendant may not avail himself of the "outrageous conduct" defense on these facts.

In his reply brief, Defendant presents a new theory to support his "outrageous conduct" defense. Under this new theory, Defendant alleges that in order to further cover up the beating he received on October 16, 2004, the police employed a confidential informant to create or induce the crimes for which Defendant was subsequently arrested on October 22, 2004. In order to test this new theory, Defendant asked the Court to compel the Government to produce the confidential informant and require him or her to testify at an evidentiary hearing or at trial. In response to this request, but without disclosing the confidential informant's identity, the Court held a sealed *in camera* hearing to elicit testimony concerning the informant's role, if any, in the crimes at issue here.

The problems with Defendant's new theory regarding the confidential informant are twofold. First, courts generally do not consider issues raised for the first time in a reply

5

brief. See generally Stump v. Gates, 211 F.3d 527, 533 (10th Cir.2000); see, e.g., FDIC v. Noel, 177 F.3d 911, 915 (10th Cir.1999) (applying this rule to district courts). Second, Defendant has provided no evidence or legal justification to support his new theory, and the Court's sealed *in camera* hearing also turned up no support for this theory.

"A defendant seeking to force disclosure of an informant's identity has the burden to show the informant's testimony is relevant or essential to the fair determination of defendant's case." United States v. Gordon, 173 F.3d 761, 767 (10th Cir. 1999). A theory based on mere speculation about the possible role of an informant does not meet this burden. In Gordon, for example, the defendant presented a theory that the informant who provided the tip that led to his arrest must have harbored an invidious racial motive against him because the description of the defendant contained in the tip mentioned his race. Id. at 768. The Tenth Circuit dismissed this theory as "rampant speculation" that "is not supported by any evidence in the record." Id.

As in Gordon, the informant's role in this case is "extremely limited," and Defendant's theory that the informant was involved in any impropriety is based on "rampant speculation." Id. at 767-68. The informant was not present at the time the officers searched the stove in Defendant's residence on October 22, 2004, and the informant's tip was not necessary to provide the legal justification for that search because Defendant voluntarily consented to it. The officers' subjective motives for requesting Defendant's permission to search are not relevant to the Fourth Amendment inquiry. See United States v. Williams, 356 F.3d 1268, 1273 (10th Cir. 2004). Once the officers found the gun in the stove during their

consensual search, they had probable cause to justify a search warrant for the other portions of the residence where illegal narcotics allegedly were found.

In addition, Defendant admitted at the suppression hearing that he purchased the gun found in the stove and that he sold "crack" cocaine. These admissions are inconsistent with a theory that the contraband was somehow planted in Defendant's residence against his will by police or by a confidential informant working under their direction. Accordingly, the confidential informant's tip has little or no bearing on the issues at stake in this case.

The confidential informant merely provided a tip, and I find that there is no basis for taking the extraordinary step of requiring the disclosure of the confidential informant's identity or requiring any additional testimony or hearings regarding this informant. Because neither Defendant's prior arrest on October 16, 2004, nor the confidential informant's tip provide any basis to support an "outrageous conduct" defense, Defendant's motion to dismiss is denied.

While the October 16 incident provides no basis for an "outrageous conduct" defense, I recognize that it may have some bearing on the voluntariness of Defendant's consent to search and the subsequent statements he made on October 22, 2004. Accordingly, this incident was considered, and still may be considered, as part of the totality of the circumstances in determining whether Defendant's subsequent consent to the search of his residence and statements to police were voluntary. When ruling on Defendant's *Motion to Suppress*, for example, Judge Conway considered whether the October 16 incident affected the voluntariness of Defendant's consent and determined that Defendant's testimony

regarding this issue was not credible. To the extent that Defendant seeks reconsideration of that ruling, I conclude that he has not shown or proffered any new facts which would undermine Judge Conway's findings.

If the Government introduces testimony at trial to the effect that Defendant made incriminating statements to police on October 22, 2004, Defendant may seek to rebut that evidence with testimony regarding the October 16 incident for the limited purpose of assisting the jury in their evaluation of the voluntariness of such statements (as indicated in the Court's Stock Jury Instruction No. CR.18A). In addition, the Court's ruling on Defendant's *Motion to Dismiss* does not necessarily preclude him from pursuing allegations of civil-rights violations that may be cognizable pursuant to 42 U.S.C. § 1983 or other laws. Without precluding Defendant from pursuing these other issues, the Court denies his motion to dismiss because the facts of this case do not fall within the very narrow confines of the "outrageous conduct" defense.

**IT IS THEREFORE ORDERED** that Defendant Yaudis Venzant-Diaz's *Motion to Dismiss* [Doc. No. 41] is **DENIED**.

**SO ORDERED** this 29th day of July, 2005, in Albuquerque, New Mexico.

                                            **M. CHRISTINA ARMIJO**
                                            UNITED STATES DISTRICT JUDGE